UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| OSK II, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| PEGGY L. CREEK, ) | |
| CHRISTOPHER E. CREEK, ) | Case No. 12-2145 |
| FIRST BANK & TRUST, S.B., ) | |
| a/k/a First Bank of Savoy, ) | |
| NEWTON'S CLEANING SPECIALIST, ) | |
| INC., and ) | |
| CTC ILLINOIS PROPERTIES, LLC, ) | |
| ) | |
| Defendants. ) | |

# O R D E R

Plaintiff OSK II, LLC, brings suit for mortgage foreclosure and other relief against Defendants CTC Illinois Properties, LLC ("CTC"), Christopher E. Creek, Peggy L. Creek, First Bank & Trust, S.B. a/k/a First Bank of Savoy, and Newton's Cleaning Specialist, Inc. Jurisdiction is based on diversity of citizenship, pursuant to 28 U.S.C. § 1332. In September 2012, Defendants CTC, Christopher Creek, and Peggy Creek filed a Motion to Dismiss (#15) and Memorandum in Support (#16), arguing that Plaintiff's complaint fails to establish that Plaintiff has standing to foreclose. Shortly thereafter, Plaintiff filed its Response in opposition (#17). After reviewing the parties' pleadings and memoranda, the Court **ORDERS** Plaintiff to produce the Asset Sale Agreement discussed below. The Court defers ruling on the Motion to Dismiss **(#15)** until after the Asset Sale Agreement is produced.

## I. Background

The following relevant background comes from Plaintiff's First Amended Complaint (#14) and is undisputed unless otherwise indicated. Plaintiff seeks to foreclose on property in Urbana, Illinois, owned by Defendant CTC. In March 2007, Main Street Bank & Trust loaned CTC $5,620,000 ("the Senior Loan"), evidenced by a promissory note ("the Senior Note"), which was secured by a mortgage on CTC's property ("the Senior Mortgage"). In September 2007, Main Street Bank & Trust loaned CTC $10,080,000 ("the Junior Loan"), evidenced by a

promissory note ("the Junior Note"), which was secured by a mortgage on the same property ("the Junior Mortgage").

Plaintiff alleges that, in March 2012, Busey Bank, Main Street Bank & Trust's successor-in-interest, "sold its rights in the Senior Loan and Junior Loan, and all accompanying documents" to Plaintiff. (#14, ¶ 22.) Plaintiff attaches to its complaint, among other documents, the Senior and Junior Notes and the Senior and Junior Mortgages (#14-1). Attached to both the Senior and Junior Notes is a document titled "Allonge."[1] The Allonge attached to the Senior Note provides:

> Reference is made to the $5,620,000.000 original principal amount promissory note dated March 1, 2007 made by CTC Illinois Properties, L.L.C, an Illinois limited liability company, and payable to the order of Busey Bank, an Illinois banking corporation (successor-in-interest to Main Street Bank & Trust) ("Assignor"), as such evidence of indebtedness has been amended, modified, supplemented, renewed, endorsed, negotiated, sold, assigned, conveyed or otherwise transferred to date (the "Note"). It is intended that this Allonge be attached to and made a permanent part of the Note.
>
> **Pay to the order of OSK II, LLC, a Minnesota limited liability company ("Assignee"), without recourse, representations or warranties or any kind, except as provided in that Asset Sale Agreement dated as of March 13, 2012, by and between Assignor and OSK, Inc., as purchaser thereunder (predecessor-in-interest to Assignee).**
>
> Executed as of March 26, 2012.

(#14-1, p. 18 (emphasis added).) The Allonge is signed by the Vice President of Busey Bank. The Allonge attached to the Junior Note is identical, except that it refers to the "$10,080,000 original principal amount promissory note dated September 24, 2007." (#14-1, p. 42.)

Defendants move to dismiss Plaintiff's complaint "pursuant to Federal Rule of Civil Procedure 12" (#15, p. 1), though they do not specify under which provision of the rule they seek

---

[1] An allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." BLACK'S LAW DICTIONARY (9th ed. 2009).

dismissal, "for failure to establish . . . standing to pursue a foreclosure of the notes and mortgages referred to therein." (#15, p. 2.)  Defendants argue that Plaintiff has provided insufficient documentation to establish its standing to foreclose because it has not attached to its complaint the "Asset Sale Agreement" referred to in the Allonges attached to the Senior and Junior Notes.  Defendants assert, "Without attaching the Asset Sales Agreement, there is no way to determine whether this is a valid assignment, giving the Plaintiff standing to pursue the foreclosure, and moreover, although the document states that it pays to the order of OSK II, L.L.C., there is a limitation in the document based upon an Asset Sales Agreement between Busey and OSK, II." (#16, p. 3.)  Defendants, therefore, move to dismiss Plaintiff's complaint or, in the alternative, request that the Court order Plaintiff to produce documentation to establish its standing.

Plaintiff responds that, to establish standing under the Illinois Mortgage Foreclosure Law, it need only allege the capacity in which it brings the foreclosure action and attach to its complaint copies of the promissory note and mortgage at issue.  Plaintiff asserts that it has done so, as it has alleged "the capacity in which it brings its claims—as owner and holder of the underlying indebtedness," and attached to its complaint both the Senior and Junior Notes, which are "specifically indorsed to [Plaintiff] pursuant to the Illinois Uniform Commercial Code," and the Senior and Junior Mortgages. (#17, ¶ 7.)

## II.  Discussion

The Court construes Defendants' motion to dismiss for lack of standing as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).  *See* FED. R. CIV. P. 12(b)(1) (dismissal for lack of subject matter jurisdiction).  Plaintiff, "as the party invoking federal jurisdiction, bears the burden of establishing the required elements of standing":  one, "an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical;" two, "a causal relationship between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant;" and, three, "a likelihood that the injury will be redressed by a favorable decision." *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).  Here, Defendants have

challenged the first prong of standing: whether Plaintiff has established that it has a legally protected interested in the promissory notes secured by the mortgages on CTC's property, such that it may sue to foreclose.

The Court's approach to evaluating standing turns on whether the defendant lodges a facial or factual challenge. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009). A facial challenge is one in which the defendant asserts that, even accepting plaintiff's allegations in the complaint as true, plaintiff has no standing. *Id.* at 444. In the case of a facial challenge, the Court accepts the allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Id.* By contrast, in a factual challenge, the defendant maintains that, although the allegations in the complaint are "facially sufficient, external facts call[] the court's jurisdiction into question." *Id.* "[W]hen considering a motion that launches a factual attack against jurisdiction, the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (internal quotation marks and alteration omitted). In this case, Defendants advance a factual challenge to Plaintiff's standing, as they call into question Plaintiff's allegation that Busey Bank assigned Plaintiff its rights in the promissory notes. Therefore, Plaintiff is incorrect that, in order to establish standing, it may rely on its allegation that it is the "owner and holder of the underlying indebtedness" secured by the mortgages on CTC's property. Rather, where a defendant asserts a factual challenge to standing, "the plaintiff bears the burden of supporting the allegations necessary for standing with 'competent proof.'" *Retired Chi. Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996). "Competent proof" requires that the plaintiff "show[] by a preponderance of the evidence, or proof to a reasonable probability, that standing exists." *Id*. Defendants argue that the evidence Plaintiff supplies in support of standing is insufficient, as Busey Bank's indorsements of the promissory notes to Plaintiff were subject to an Asset Sale Agreement that Plaintiff has not produced.

4

The Court, considering the allegations in Plaintiff's complaint and the evidence submitted on the issue, concludes that Plaintiff has failed to produce competent proof of its standing to sue for foreclosure. Plaintiff is certainly correct that it has formally complied with the relevant requirements for foreclosure complaints set forth by the Illinois Mortgage Foreclosure Law:[2] Plaintiff has stated the capacity in which it brings this action—as owner and legal holder of the Senior and Junior Notes, which are secured by the Senior and Junior Mortgages—and has attached copies of the Notes and Mortgages. *See* 735 ILCS § 5/15-1504(a) (enumerating requirements for foreclosure complaint, including that plaintiff state the "[c]apacity in which plaintiff brings this foreclosure" attach "a copy of the mortgage and . . . a copy of the note secured thereby"). Nonetheless, compliance with the requirements of the IMFL does not establish standing where the note and mortgage attached to the complaint do not support the plaintiff's allegation that it is the legal holder of the indebtedness secured by the mortgage. *See Deutsche Bank Nat'l Trust Co. v. Gilbert*, No. 2–12–0164, 2012 IL App (2d) 120164, at *4 (Ill. App. Ct. Sept. 25, 2012) (rejecting plaintiff's argument "that its standing to bring the action was established by its complaint, which alleged that it was the holder of the indebtedness and attached copies of the note and the mortgage[,]" where "the attached note and mortgage did not show that [plaintiff] owned the loan . . . ."). Here, Busey Bank's orders to pay Plaintiff the Senior and Junior Notes are conditional; they are "without recourse, representations or warranties or any kind, *except as provided in that Asset Sale Agreement*." (#14-1, pp. 18, 42 (emphasis added).) The Court agrees with Defendants that the Asset Sale Agreement could limit Plaintiff's rights in the Notes, a possibility that cannot be confirmed or denied without seeing the actual agreement.

### III.  Summary

Therefore, the Court **ORDERS** Plaintiff to produce the Asset Sale Agreement within fourteen days of the entry of this order. Plaintiff may e-file the Asset Sale Agreement. In addition, Plaintiff may also e-file a short brief in support, explaining whether the Asset Sale Agreement limits its rights in the Notes or Mortgages. Defendants may e-file a short response

---

[2] The parties agree that Illinois law applies.

within seven days of the filing of the Asset Sale Agreement.  The Court defers ruling on the Motion to Dismiss (#15) until after production of the Asset Sale Agreement.

    ENTERED this 1st day of November, 2012.

                                                       s/DAVID G. BERNTHAL
                                         UNITED STATES MAGISTRATE JUDGE