E-FILED
Tuesday, 20 November, 2012  04:27:26 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES  DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### Urbana Division

| | | |
|---|---|---|
| OSK II, LLC, | ) | |
| | ) | |
|         Plaintiff, | ) | |
|   v. | ) | |
| | ) | |
| PEGGY L. CREEK, | ) | |
| CHRISTOPHER E. CREEK, | ) | Case No. 12-2145 |
| FIRST BANK & TRUST, S.B., | ) | |
| a/k/a First Bank of Savoy, and | ) | |
| NEWTON'S CLEANING SPECIALIST, | ) | |
| INC., and | ) | |
| CTC ILLINOIS PROPERTIES, LLC, | ) | |
| | ) | |
|         Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff OSK II, LLC, brings suit for mortgage foreclosure and other relief against Defendants CTC Illinois Properties, LLC ("CTC"), Christopher E. Creek, Peggy L. Creek, First Bank & Trust, S.B. a/k/a First Bank of Savoy, and Newton's Cleaning Specialist, Inc. Jurisdiction is based on diversity of citizenship, pursuant to 28 U.S.C. § 1332.  In September 2012, Defendants CTC, Christopher Creek, and Peggy Creek filed a Motion to Dismiss (#15) and Memorandum in Support (#16), arguing that Plaintiff does not have standing to foreclose.  Shortly thereafter, Plaintiff filed its Response in opposition (#17).  After reviewing the parties' pleadings and memoranda, the Court recommends that Defendants' Motion to Dismiss (**#15**) be **DENIED**.

### I.  Background

The following relevant background comes from Plaintiff's First Amended Complaint (#14) and is undisputed unless otherwise indicated.  Plaintiff seeks to foreclose on property in Urbana, Illinois, owned by Defendant CTC.  In March 2007, Main Street Bank & Trust loaned CTC $5,620,000 ("the Senior Loan"), evidenced by a promissory note ("the Senior Note"), which was secured by a mortgage on CTC's property ("the Senior Mortgage").  In September 2007, Main Street Bank & Trust loaned CTC $10,080,000 ("the Junior Loan"), evidenced by a

promissory note ("the Junior Note"), which was secured by a mortgage on the same property ("the Junior Mortgage").

Plaintiff alleges that, in March 2012, Busey Bank, Main Street Bank & Trust's successor-in-interest, "sold its rights in the Senior Loan and Junior Loan, and all accompanying documents" to Plaintiff.  (#14, ¶ 22.)  Plaintiff attaches to its complaint, among other documents, the Senior and Junior Notes and the Senior and Junior Mortgages (#14-1).  Attached to the both the Senior and Junior Notes is a document titled "Allonge."[1]  The Allonge attached to the Senior Note provides:

> Reference is made to the $5,620,000.000 original principal amount promissory note dated March 1, 2007 made by CTC Illinois Properties, L.L.C, an Illinois limited liability company, and payable to the order of Busey Bank, an Illinois banking corporation (successor-in-interest to Main Street Bank & Trust) ("Assignor"), as such evidence of indebtedness has been amended, modified, supplemented, renewed, endorsed, negotiated, sold, assigned, conveyed or otherwise transferred to date (the "Note").  It is intended that this Allonge be attached to and made a permanent part of the Note.
>
> **Pay to the order of OSK II, LLC, a Minnesota limited liability company ("Assignee"), without recourse, representations or warranties or any kind, except as provided in that Asset Sale Agreement dated as of March 13, 2012, by and between Assignor and OSK, Inc., as purchaser thereunder (predecessor-in-interest to Assignee).**
>
> Executed as of March 26, 2012.

(#14-1, p. 18 (emphasis added).)  The Allonge is signed by the Vice President of Busey Bank. The Allonge attached to the Junior Note is identical, except that it refers to the "$10,080,000 original principal amount promissory note dated September 24, 2007." (#14-1, p. 42.)

---

[1] An allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." BLACK'S LAW DICTIONARY (9th ed. 2009).

Defendants moved to dismiss Plaintiff's complaint "pursuant to Federal Rule of Civil Procedure 12" (#15, p. 1), though they did not specify under which provision of the rule they sought dismissal, "for failure to establish . . . standing to pursue a foreclosure of the notes and mortgages referred to therein." (#15, p. 2.) In their motion, Defendants argued that Plaintiff failed to provide sufficient documentation to establish its standing to foreclose because it had not attached to its complaint the "Asset Sale Agreement" referred to in the Allonges attached to the Senior and Junior Notes. Defendants asked the Court either to dismiss Plaintiff's complaint for lack of standing or to order Plaintiff to produce the Asset Sale Agreement.

On November 1, 2012, this Court ordered Plaintiff to produce the Asset Sale Agreement (#20). The Court agreed with Defendants that the Asset Sale Agreement possibly limited Plaintiff's rights in the Notes secured by the Senior and Junior mortgages, because Busey Bank's orders to pay Plaintiff were "without recourse, representations or warranties or any kind, *except as provided in that Asset Sale Agreement*." (#14-1, pp. 18, 42 (emphasis added).) The Court concluded that, without reading the Asset Sale Agreement, the Court could not ascertain the Agreement's effect on Plaintiff's rights in the Notes. In addition to ordering Plaintiff to produce the Asset Sale Agreement, the Court permitted both parties to file short briefs as to whether the Agreement limited Plaintiff's rights in the Notes.

Shortly thereafter, Plaintiff filed the Asset Sale Agreement; an affidavit from the Chief Operating Officer of OSK, Inc., the sole member of Plaintiff OSK II, LLC; the Bill of Sale of the Loans, Notes, and Mortgages; and Plaintiff's brief in support (#21). Defendants, in their response brief, raise only one argument in support of their position that Plaintiff has still not established standing to foreclose. Defendants note that Section 3.5 of the Asset Sale Agreement provides:

3

**Payments Subsequent to the Closing Date.** From time to time after the closing date the seller shall pay to the buyer, promptly after receipt thereof, the net amount of any collections received by the seller on or after the closing date (to the extent collected in good funds by the seller) and not already so paid to the buyer, but only after all payments due to the seller from the buyer in connection with the sale of the loans have been paid to the seller, including, without limitation, any costs and expenses related to any collections.

(#21, p. 7.) Defendants maintain that this section of the Asset Sales Agreement establishes "a condition precedent which must be alleged and satisfied before Plaintiff can proceed with the instant suit." (#22, p. 2.) Defendants argue that Plaintiff has not alleged or provided any evidence that has complied with this "condition precedent," and, until it does so, has not established standing to foreclose.

## II. Discussion

The Court construes Defendants' motion to dismiss for lack of standing as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). *See* FED. R. CIV. P. 12(b)(1) (dismissal for lack of subject matter jurisdiction). Plaintiff, "as the party invoking federal jurisdiction, bears the burden of establishing the required elements of standing": one, "an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical;" two, "a causal relationship between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant;" and, three, "a likelihood that the injury will be redressed by a favorable decision." *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003). Here, Defendants have challenged the first prong of standing: whether Plaintiff has established that it has a legally protected interested in the promissory notes secured by the mortgages on CTC's property, such that it may sue to foreclose.

The Court's approach to evaluating standing turns on whether the defendant lodges a facial or factual challenge. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009). A facial challenge is one in which the defendant asserts that, even accepting plaintiff's allegations in the complaint as true, plaintiff has no standing. *Id.* at 444. In the case

4

of a facial challenge, the Court accepts the allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Id.* By contrast, in a factual challenge, the defendant maintains that, although the allegations in the complaint are "facially sufficient, external facts call[] the court's jurisdiction into question." *Id.* "[W]hen considering a motion that launches a factual attack against jurisdiction, the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (internal quotation marks and alteration omitted). In this case, Defendants advance a factual challenge to Plaintiff's standing, as they call into question Plaintiff's allegation that Busey Bank assigned Plaintiff its rights in the promissory notes. Where a defendant asserts a factual challenge to standing, "the plaintiff bears the burden of supporting the allegations necessary for standing with 'competent proof.'" *Retired Chi. Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996). "Competent proof" requires that the plaintiff "show[] by a preponderance of the evidence, or proof to a reasonable probability, that standing exists." *Id.*

After reviewing the documents originally submitted with Plaintiff's complaint, as well as the Bill of Sale and the Asset Sale Agreement, the Court is satisfied that Plaintiff has supplied competent proof of its standing to foreclose on the Senior and Junior mortgages. *See* 735 ILCS § 5/15-1208 ("'Mortgagee' means (i) the holder of an indebtedness or obligee of a non-monetary obligation secured by a mortgage or any person designated or authorized to act on behalf of such holder and (ii) any person claiming through a mortgagee as successor."). Defendants' only argument to the contrary is unpersuasive. The Court reads Section 3.5 of the Asset Sale Agreement to speak only to payments on the loans that Busey Bank, the seller, may receive after the closing date of the sale of the loans to Plaintiff. Section 3.5 provides that Busey Bank is required to pass those loan payments on to Plaintiff only if Plaintiff has paid Busey Bank completely for the Loans, Notes, and Mortgages. This provision, in no way, imposes a condition precedent on Plaintiff's right to foreclose but, rather, only on Plaintiff's right to collect from Busey any payments Busey has received. The Court, therefore, rejects Defendants' argument and concludes that Plaintiff has established standing to foreclose.

5

### III.  Summary

Therefore, the Court recommends that Defendants' Motion to Dismiss (**#15**) be
**DENIED**.  The Court shall address Plaintiff's Motion to Appoint Receiver (#9) after
U.S. District Judge Michael P. McCuskey has ruled on this Report and Recommendation.

The parties are advised that any objection to this recommendation must be filed in
writing with the clerk within 14 days after being served with a copy of this Report and
Recommendation.  *See* 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of
objections on appeal.  *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 20th day of November, 2012.

s/DAVID G. BERNTHAL
UNITED STATES MAGISTRATE JUDGE
